IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

        Plaintiff,

v.

18,753 COMIC BOOKS,
1998 BMW 740IL VIN WBAGJ8320WDM08536,
2000 AUDI A8 VIN WAUFL54D1YND002010,
2001 FORD MUSTANG VIN 1FAFP42X61F104391,
1998 MERCEDES-BENZ S500 VIN WDBGA51G5WA385027,
1998 LEXUS GS300 VIN JT8BD68S8W0032384,
$747.00 UNITED STATES CURRENCY,
$850.00 UNITED STATES CURRENCY,
$953.00 UNITED STATES CURRENCY, and
$545.00 UNITED STATES CURRENCY,

        Defendants.

_____

**VERIFIED COMPLAINT FOR FORFEITURE IN REM**
_____

        The United States of America, by and through United States Attorney John F. Walsh and Assistant United States Attorney Martha A. Paluch, pursuant to Supplemental Rules for Admiralty, Maritime and Asset Forfeiture Claims G(2), states:

JURISDICTION AND VENUE

        1.     The United States of America (the "United States") has commenced this action pursuant to the civil forfeiture provisions of 21 U.S.C. § 881, seeking forfeiture of defendant property based upon violations of 21 U.S.C. § 801 et seq. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

2. Venue is proper under 21 U.S.C. § 881(j), 19 U.S.C. § 1605, and 28 U.S.C. § 1395, as the defendant property is located, and all acts described herein occurred, in the District of Colorado.

## DEFENDANT PROPERTY

3. Defendant property is more fully described as:

a. 18,753 Comic Books (defendant "Comics") seized from Aaron Castro on August 14, 2009, at 9693 Ironton Street, Commerce City, Colorado, and 2746 West 2nd Avenue, Denver, Colorado, and are currently being held by North Metro Drug Task Force, Denver, Colorado.

b. 1998 BMW 740IL VIN WBAGJ8320WDM08536 (defendant "BMW") seized from Aaron Castro on August 14, 2009, at 4865 Quebec Street, Denver, Colorado, and is currently being held by the North Metro Drug Task Force, Denver, Colorado.

c. 2000 Audi A8 VIN WAUFL54D1YN002010 (defendant "Audi") seized from the Aureliano Montoya-Cervantes aka Mermas on August 14, 2009, at 15625 East 50th Avenue, Denver, Colorado, and is currently being held by the North Metro Drug Task Force, Denver, Colorado.

d. 2001 Ford Mustang VIN 1FAFP42X61F104391 (defendant "Mustang") seized from Aaron Castro on August 14, 2009, at a storage unit located at 15200 East 53rd Avenue, Denver, Colorado, and is currently being held by the North Metro Drug Task Force, Denver, Colorado.

e. 1998 Mercedes-Benz S500 VIN WDBGA51G5WA385027 (defendant "Benz") seized from Nicholas Castro on August 14, 2009, at 3172 Atchinson Way, Aurora, Colorado, and is currently being held by the North Metro Drug Task Force, Denver, Colorado.

    f. 1998 Lexus GS300 VIN JT8BD68S8W0032384 (defendant "Lexus") seized from Carlos Olmos on August 14, 2009, at 6003 Grape Drive, Commerce City, Colorado, and is currently being held by the North Metro Drug Task Force, Denver, Colorado.

    g. $747.00 United States Currency (defendant "747") seized from Alfonzo Castro on August 14, 2009, at 7161 Samuel Drive #7, Denver, Colorado, and is currently being held by the North Metro Drug Task Force, Denver, Colorado.

    h. $850.00 United States Currency (defendant "850") seized from Chia Lee on August 14, 2009, at 8939 Circle Drive, Westminster, Colorado, and is currently being held by the North Metro Drug Task Force, Denver, Colorado.

    i. $953.00 United States Currency (defendant "953") seized from Omar Carrola, on August 14, 2009, at 4864 Gibralter Street, Denver, Colorado, and is currently being held by the North Metro Drug Task Force, Denver, Colorado.

    j. $545.00 United States Currency (defendant "545") seized from Aureliano Montoya-Cervantes aka Mermas on August 14, 2009, at 15625 East 50th Avenue, Denver, Colorado, and is currently being held by the North Metro Drug Task Force, Denver, Colorado.

FACTUAL BASIS FOR FORFEITURE

Except as otherwise noted, all of the following facts and information have been discovered through my own investigation and observations, and the observations and investigations of fellow law enforcement officers as reported to me.

  4. In September 2008, North Metro Drug Task Force (NMTF) began an investigation into the drug trafficking activities of the Castro Target Organization. It was discovered that the organization contained approximately 90 members who were distributing methamphetamine at the

direction of Aaron Castro (hereinafter "Aaron") and Alfonzo Castro (hereinafter "Alfonzo"), and that Aaron and Alfonzo were utilizing at least three sources of supply to obtain their drugs.

5. Information was provided by confidential sources regarding the drug trafficking activities and acquisition of defendant properties by the members of the Castro Target Organization.

6. On November 25, 2008, NMTF received information from a confidential informant (CI) that he was going to meet Chia Lee (hereinafter "Lee"), a member of the Castro Organization, at the Comfort Inn in Denver, Colorado. Surveillance was set up in the area and officers observed the CI and Lee leave the Comfort Inn in the CI's vehicle and travel to an apartment located in Westminster, Colorado.

7. The CI contacted NMTF and informed them that Lee had entered the apartment to make a methamphetamine exchange. A short time later the CI and Lee were observed leaving the area and a traffic stop was performed.

8. Officers confirmed that the passenger was Lee and that there was an outstanding warrant for his arrest. Lee was searched pursuant to arrest and officers found 3.96 net grams of methamphetamine.

9. On February 26, 2009, NMTF detectives observed Alfonzo leave his residence located at 1901 49th Avenue, Denver, Colorado, in defendant Lexus and travel to 9800 Washington Street, Thornton, Colorado where Alfonzo was seen making a hand to hand exchange with Chi Vang, who authorities later determined was one of Alfonzo's primary drug runners.

10. On April, 16, 2009, Denver Police Department executed a search warrant at 5431 North Zuni Street, Denver, Colorado, the residence of Cody Cook (hereinafter "Cook"), a known drug dealer for the Castro Organization. During the search detectives found 72 grams of

methamphetamine. Cook agreed to talk to detectives and admitted to dealing methamphetamine and that he had received the methamphetamine from Alfonzo the previous day. During the interview, Cook identified Lee as an active drug dealer for Aaron, and identified phone numbers in his phone that belonged to several other drug dealers. While speaking with detectives, Cook received calls from Aaron and Alfonzo. The phone call from Aaron advised Cook that his Mexican source had arrived in town, and the call from Alfonzo was to arrange for the delivery of four ounces of methamphetamine.

11.     In May 2009, pole cameras were installed at 9693 Ironton Street, Commerce City, Colorado, the residence of Aaron, and at 5431 Zuni Street, Westminster, Colorado, the residence of Cook. Numerous drug transactions have been discussed on wiretaps and have been confirmed through observation of video footage from these pole cameras.

12.     On May 1, 2009, Cook contacted NMTF to advise them that he had met with Aaron to arrange a purchase of three ounces of methamphetamine. Cook was provided with $5,000.00 in pre-recorded funds to be used to purchase three ounces of methamphetamine from Aaron.

13.     Cook met Aaron at the Comfort Inn located on Quebec Street, Denver, Colorado. Aaron informed Cook that his source, "Omar" later identified as Omar Corolla (hereinafter, "Corolla"), was on his way. Shortly thereafter, surveillance observed Aaron meeting with Corolla in the parking lot. Aaron returned to Cook in the hotel room and produced five ounces of methamphetamine he had just received from Corolla. Cook told Aaron that he only wanted three ounces of the methamphetamine, but decided to take five ounces and agreed to pay Aaron for the additional two ounces of methamphetamine later. Following this exchange, Cook met with detectives and turned over the five ounces of methamphetamine purchased from Aaron.

14. On May 15, 2009, NMTF received numerous intercepted telephone calls from Alfonzo to Vang asking Vang to bring money to the shop. In response to these telephone calls, NMTF setup surveillance at 5068 North Federal Boulevard, Denver, Colorado, a known store front of Alfonzo's and meeting place for his drug runners. During this surveillance, officers observed Corolla arrive in his Grand Prix and drive to the alley behind the business for a short time. After Corolla left the business, officers noticed an increase in vehicle and foot traffic to and from this location.

15. On May 25, 2009, Aaron was out collecting money and surveillance observed Aaron, driving defendant BMW, meet with Corolla for approximately 15 minutes. A short time later NMTF intercepted a telephone call from Aaron to Kong Lor (hereinafter "Boi"). Aaron had asked Boi to meet his source Aureliano Montoya-Cervantes (hereinafter "Mermas") at Aaron's house. During the telephone call, Aaron and Boi discussed a drug exchange to be made with Mermas. While waiting for Mermas, Boi asked Aaron for a joint. Aaron told Boi that his stash is hidden in defendant Comics. Shortly thereafter, surveillance observed Mermas arrive at Aaron's residence driving defendant Mustang.

16. On May 26, 2009, Aaron contacted Mermas to discuss the amounts owed to Mermas by Cook and Boi. Mermas tells Aaron that he needs the money owed to him. Aaron tells Mermas that it is Cook who owes Mermas. Mermas tells Aaron to call Cook to let him know that Mermas is sending someone to his house to pick up the money.

17. On June 30, 2009, Juan Velasquez, a roommate of Aaron's, was arrested for an outstanding warrant. During his interview with the detective, Velasquez stated that Aaron was selling pound quantities of methamphetamine from his residence at 9693 Ironton Street, Commerce

City, Colorado.

18.     On August 3, 2009, detectives were advised of a call with Aaron and an individual named Eddie Vigil setting up a meeting to exchange money and narcotics. The meeting was to take place at 3685 East 121st Avenue, Thornton, Colorado. Detectives then observed defendant BMW parked on the south side of this address.

19.     On August 14, 2009, search warrants for the following addresses were executed in connection with the drug trafficking activities of the Castro Target Organization:

   a.   7161 Samuel Drive #7, Denver, Colorado, the residence of Alfonzo Castro. Defendant $747 was seized as drug proceeds in the south bedroom at this location.

   b.   5068 Federal Boulevard, Denver, Colorado, the store front utilized by Alfonzo Castro. Officers found pay/owe sheets confirming drug trafficking activities of the Castro Target Organization at this location.

   c.   9693 Ironton Street, Commerce City, Colorado, the residence of Aaron Castro. Officers found 76.66 grams of methamphetamine hidden in defendant Comics at this location.

   d.   8939 Circle Drive, Adams County, Colorado, residence of Chia Lee. In Lee's bedroom, officers found two baggies containing 144.88 net grams of methamphetamine, gross grams of marijuana, and defendant $850.

   e.   4684 Gibralter Street, Denver, Colorado, the residence of Omar Carrola. In Carrola's bedroom, officers found 27.9 net grams of methamphetamine, 4.3 net grams of cocaine, a handgun, a scale, and defendant $953.

   f.   15625 East 50th Avenue, Denver, Colorado, the residence of Aureliano Montoya-Cervantes (Mermas). Officers found .55 grams of methamphetamine, pay/owe sheets,

packaging supplies for narcotics, handguns, and defendant $545.

20. Following the execution of these search warrants and the arrests of numerous members of the Castro organization, detectives interviewed several of Aaron and Alfonzo's drug runners.

21. On December 16, 2009, detectives interviewed Lonna Gwinn (hereinafter "Gwinn"). Gwinn told detectives that she originally sold methamphetamine for Boi, but eventually moved up to work directly for Aaron. Gwinn said that Aaron began to struggle with money because he would spend his drug money on comic books. Gwinn would meet Aaron at comic book stores to give him the drug money and had seen Aaron buy a box of comic books.

22. Gwinn said that Aaron did not have a job and dealt methamphetamine as his primary employment. Gwinn confirmed that she had delivered methamphetamine with Aaron in defendant BMW.

23. Gwinn told detectives that Alfonzo did not have a job and that the store front on Federal Boulevard was not legitimate. Gwinn said that Alfonzo purchased defendant Lexus with drug proceeds and that Alfonzo told her that he stored methamphetamine in both defendant Lexus and defendant Benz.

24. On January 22, 2010, detectives interviewed Mermas, who confirmed that he was a source of supply for Aaron. Mermas stated that he supplied ounce quantities to Aaron, which he documented on pay/owe sheets that were found at his residence. Mermas told detectives that both defendant Mustang and defendant Audi were given to him by Aaron for past drug debts. Mermas disclosed that defendant Audi has a hidden compartment in the driver's side door.

25. On February 3, 2010, detectives met with Lee who told detectives that he began obtaining methamphetamine from Aaron in 2007, and that he would receive four to five ounces of methamphetamine per day from Aaron. Lee stated that Aaron would receive one pound of methamphetamine per day from Mermas. Lee told detectives that he had helped Aaron organize defendant comics, which he confirmed were purchased by Aaron with drug proceeds.

26. On February 4, 2010, detectives interviewed Sabrina Cisneros (hereinafter "Cisneros"), a member of the Castro Organization and girlfriend of Aaron. Cisneros told detectives that Aaron purchased defendant Comics with drug proceeds. Cisneros stated that Aaron owned defendant Audi and defendant BMW, but the vehicles were registered in Aaron's mother's and sister's names because Aaron did not have a driver's license.

27. On April 20, 2010, Alfonzo told detectives that he began running his drug business when he was released from prison and entered the halfway house. Alfonzo stated that he would make fake paystubs to cover up his lack of legitimate employment. Alfonzo confirmed that defendant Benz and defendant Lexus were purchased with drug proceeds.

28. On June 11, 2010, detectives interviewed the owner of Ultimate Automotive regarding the sale of defendant Mustang and defendant Benz. Detectives were told that Aaron purchased defendant Mustang on February 24, 2009, and Alfonzo purchased defendant Benz on January 20, 2009. Both vehicles were placed in Aaron or Alfonzo's sisters' names because neither Aaron nor Alfonzo had a driver's license.

29. Based in part on the facts contained herein, Aaron Castro was arrested and charged in Adams County Colorado with multiple counts of Controlled Substance-Distribute Schedule 2, multiple counts of Controlled Substance-Possession with Intent Schedule 2, Controlled Substance-

Conspiracy Possession of a Schedule 2, Extortion, Cocca-Conspiracy, and Controlled Substance-Special Offender-Deadly Weapon, state criminal case number 09-cr-2261. Trial is set for May 6, 2011.

30. Based in part on the facts contained herein, Alfonzo Castro was arrested and charged in Adams County Colorado with multiple counts of Controlled Substance-Distribute Schedule 2, multiple counts of Controlled Substance-Possession with Intent Schedule 2, and Controlled Substance-Conspiracy Possession of a Schedule 2, state criminal case number 10-cr-2263. On August 6, 2010, Alfonzo Castro pled guilty to Controlled Substance-Distribute Schedule 2 and was sentenced to 20 years in the Colorado Department of Corrections.

31. A search of the Department of Labor records revealed that Aaron Castro had reported income of $1,894.25 in 2004, $504.18 in 2005, no income in 2006, $810.40 in 2007 and no income in 2008-2010.

32. A search of the Department of Labor records revealed that Alfonzo Castro had no reported income.

33. In summary, Aaron Castro and Alfonzo Castro were running an illegal drug trafficking organization that included numerous individuals and the acquisition of numerous assets including defendant Comics, defendant BMW, defendant Audi, defendant Mustang, defendant Benz, defendant Lexus, defendant $747, defendant $850, defendant $953, and defendant $545. The Castro Target Organization has been trafficking in illegal drugs and defendant properties are forfeitable as property furnished or intended to be furnished in, as proceeds traceable to, and as property used or intended to be used in, illegal drug trafficking.

. VERIFICATION OF BRIAN ANDERSON

SPECIAL AGENT, INTERNAL REVENUE SERVICE, CRIMINAL INVESTIGATION

I, Special Agent, Brian Anderson, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true to the best of my information and belief.

                                                s/Brian Anderson
                                                Brian Anderson

| | |
|---|---|
| STATE OF COLORADO | ) |
| CITY AND | )ss |
| COUNTY OF DENVER | ) |

The foregoing was acknowledged before me this 2nd day of March, 2011 by Brian Anderson, Special Agent, Internal Revenue Service, Criminal Investigation.

                                                s/Pamela D. Thompson
                                              Notary Public - Colorado

My Commission Expires: 5-3-2014

FIRST CLAIM FOR RELIEF

34. The Plaintiff repeats and incorporates by reference the paragraphs above.

35. By the foregoing and other acts, defendant Comics was used, or intended to be used, as a container for controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(3).

SECOND CLAIM FOR RELIEF

36. The Plaintiff repeats and incorporates by reference the paragraphs above.

37. By the foregoing and other acts, defendant Comics constitutes proceeds traceable to exchanges of controlled substances in violation of 21 U.S.C. § 801 et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

### THIRD CLAIM FOR RELIEF

38. The Plaintiff repeats and incorporates by reference the paragraphs above.

39. By the foregoing and other acts, defendant BMW was used, or intended to be used, as a container for controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(3).

### FOURTH CLAIM FOR RELIEF

40. The Plaintiff repeats and incorporates by reference the paragraphs above.

41. By the foregoing and other acts, defendant BMW constitutes a vehicle used, and intended to be used, to transport, and in any manner to facilitate the transportation, sale, receipt, possession, or concealment, of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the Untied States pursuant to 21 U.S.C. § 881(a)(4).

### FIFTH CLAIM FOR RELIEF

42. The Plaintiff repeats and incorporates by reference the paragraphs above.

43. By the foregoing and other acts, defendant BMW constitutes proceeds traceable to exchanges of controlled substances in violation of 21 U.S.C. § 801 et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

### SIXTH CLAIM FOR RELIEF

44. The Plaintiff repeats and incorporates by reference the paragraphs above.

45. By the foregoing and other acts, defendant Audi was used, or intended to be used, as a container for controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(3).

### SEVENTH CLAIM FOR RELIEF

46. The Plaintiff repeats and incorporates by reference the paragraphs above.

47. By the foregoing and other acts, defendant Audi constitutes a vehicle used, and intended to be used, to transport, and in any manner to facilitate the transportation, sale, receipt, possession, or concealment, of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the Untied States pursuant to 21 U.S.C. § 881(a)(4).

### EIGHTH CLAIM FOR RELIEF

48. The Plaintiff repeats and incorporates by reference the paragraphs above.

49. By the foregoing and other acts, defendant Audi constitutes proceeds traceable to exchanges of controlled substances in violation of 21 U.S.C. § 801 et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

### NINTH CLAIM FOR RELIEF

50. The Plaintiff repeats and incorporates by reference the paragraphs above.

51. By the foregoing and other acts, defendant Mustang was used, or intended to be used, as a container for controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(3).

### TENTH CLAIM FOR RELIEF

52. The Plaintiff repeats and incorporates by reference the paragraphs above.

53. By the foregoing and other acts, defendant Mustang constitutes a vehicle used, and intended to be used, to transport, and in any manner to facilitate the transportation, sale, receipt, possession, or concealment, of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the Untied States pursuant to 21 U.S.C. § 881(a)(4).

### ELEVENTH CLAIM FOR RELIEF

54. The Plaintiff repeats and incorporates by reference the paragraphs above.

55. By the foregoing and other acts, defendant Mustang constitutes proceeds traceable to exchanges of controlled substances in violation of 21 U.S.C. § 801 et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

### TWELFTH CLAIM FOR RELIEF

56. The Plaintiff repeats and incorporates by reference the paragraphs above.

57. By the foregoing and other acts, defendant Benz was used, or intended to be used, as a container for controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(3).

### THIRTEENTH CLAIM FOR RELIEF

58. The Plaintiff repeats and incorporates by reference the paragraphs above.

59. By the foregoing and other acts, defendant Benz constitutes a vehicle used, and intended to be used, to transport, and in any manner to facilitate the transportation, sale, receipt, possession, or concealment, of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the Untied States pursuant to 21 U.S.C. § 881(a)(4).

### FOURTEENTH CLAIM FOR RELIEF

60. The Plaintiff repeats and incorporates by reference the paragraphs above.

61.     By the foregoing and other acts, defendant Benz constitutes proceeds traceable to exchanges of controlled substances in violation of 21 U.S.C. § 801 et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

### FIFTEENTH CLAIM FOR RELIEF

62.     The Plaintiff repeats and incorporates by reference the paragraphs above.

63.     By the foregoing and other acts, defendant Lexus was used, or intended to be used, as a container for controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(3).

### SIXTEENTH CLAIM FOR RELIEF

64.     The Plaintiff repeats and incorporates by reference the paragraphs above.

65.     By the foregoing and other acts, defendant Lexus constitutes a vehicle used, and intended to be used, to transport, and in any manner to facilitate the transportation, sale, receipt, possession, or concealment, of controlled substances in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the Untied States pursuant to 21 U.S.C. § 881(a)(4).

### SEVENTEENTH CLAIM FOR RELIEF

66.     The Plaintiff repeats and incorporates by reference the paragraphs above.

67.     By the foregoing and other acts, defendant Lexus constitutes proceeds traceable to exchanges of controlled substances in violation of 21 U.S.C. § 801 et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

### EIGHTEENTH CLAIM FOR RELIEF

68.     The Plaintiff repeats and incorporates by reference the paragraphs above.

69.     By the foregoing and other acts, defendant $747 constitutes money furnished or

intended to be furnished by any person in exchange for a controlled substance in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## NINETEENTH CLAIM FOR RELIEF

70. The Plaintiff repeats and incorporates by reference the paragraphs above.

71. By the foregoing and other acts, defendant $747 constitutes proceeds traceable to exchanges of controlled substances in violation of 21 U.S.C. § 801 et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## TWENTIETH CLAIM FOR RELIEF

72. The Plaintiff repeats and incorporates by reference the paragraphs above.

73. By the foregoing and other acts, defendant $850 constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## TWENTY-FIRST CLAIM FOR RELIEF

74. The Plaintiff repeats and incorporates by reference the paragraphs above.

75. By the foregoing and other acts, defendant $850 constitutes proceeds traceable to exchanges of controlled substances in violation of 21 U.S.C. § 801 et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## TWENTY-SECOND CLAIM FOR RELIEF

76. The Plaintiff repeats and incorporates by reference the paragraphs above.

77.     By the foregoing and other acts, defendant $953 constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

### TWENTY-THIRD CLAIM FOR RELIEF

78.     The Plaintiff repeats and incorporates by reference the paragraphs above.

79.     By the foregoing and other acts, defendant $953 constitutes proceeds traceable to exchanges of controlled substances in violation of 21 U.S.C. § 801 et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

### TWENTY-FOURTH CLAIM FOR RELIEF

80.     The Plaintiff repeats and incorporates by reference the paragraphs above.

81.     By the foregoing and other acts, defendant $545 constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

### TWENTY-FIFTH CLAIM FOR RELIEF

82.     The Plaintiff repeats and incorporates by reference the paragraphs above.

83.     By the foregoing and other acts, defendant $545 constitutes proceeds traceable to exchanges of controlled substances in violation of 21 U.S.C. § 801 et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the defendant property in favor of the United States, that the United States be authorized to dispose of the defendant property in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant property and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

Dated this 2nd day of March, 2011.

Respectfully submitted,

JOHN F. WALSH
United States Attorney

By: s/Martha A. Paluch
MARTHA A. PALUCH
Assistant United States Attorney
United States Attorney's Office
1225 17th Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0353
Fax: (303) 454-0402
E-mail: Martha.Paluch@usdoj.gov